GOODWIN v. GUNTER et al.

(Court of Civil Appeals of Texas. San Antonio. Dec. 20, 1911. On Motion for Rehearing, Jan. 17, 1912.)

1. APPEAL AND ERROR (§ 1010*)—FINDINGS—REVIEW.

Findings of a trial court supported by evidence cannot be set aside on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982; Dec. Dig. § 1010.*]

2. BROKERS (§ 53*)—RIGHT TO COMMISSIONS.

Before a broker is entitled to commissions for selling land, he must find a purchaser and establish as a fact that he was the efficient agent or procuring cause of the sale.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 74; Dec. Dig. § 53.*]

3. BROKERS (§ 86*)—SALE OF LAND—RIGHT TO COMMISSIONS—PROCURING CAUSE.

In an action for a broker's commission, held, that plaintiff was not the procuring cause of the sale to L. and was not entitled to commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

On Motion for Rehearing.

4. BROKERS (§ 57*)—SALE OF LAND—RIGHT TO COMMISSIONS.

Where a broker procures a purchaser, ready, willing, and able to pay the authorized price, he has performed his duty and is entitled to commissions, though the price and terms are subsequently changed.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66, 67, 72; Dec. Dig. § 57.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by Osce Goodwin against Mrs. Roxana Gunter and others. Judgment for defendants, and plaintiff appeals. Affirmed.

J. M. Eskridge and M. B. Templeton, for appellant. Clark & Bliss and Spence, Knight, Baker & Harris, for appellees.

COBBS, J. This suit was instituted by Osce Goodwin against Roxana Gunter to recover $10,924.40 claimed by him as commission on sale of 7,283 acres of land in Grayson county, sold to Henry D. Lindsley in July, 1909. Roxana Gunter pleaded by way of general denial and pleaded specially by way of cross-action against Henry D. Lindsley, whom she brought in to have judgment over should Goodwin recover against her upon alleged fraudulent misrepresentations made to her at time of sale. Lindsley answered by filing and presenting plea of privilege, plea of misjoinder of parties defendant, misjoinder of action, plea to abate, and denial. The case was tried before the court without jury. The court made and filed findings of fact and conclusions of law, which are attacked by assignments complaining that some of such findings are not supported by the evidence. An examination of the statement of facts shows that the findings of the court are well supported.

The findings of fact and conclusions of law are as follows:

## "Findings of Fact.

"That Roxana Gunter, the widow of Jot Gunter, deceased, being the owner in her own right of what is known as the Gunter ranch in Grayson county, Tex., consisting of about 7,283 acres of land, and acting through her duly authorized agent, with full authority to act, Judge Don A. Bliss, on or about the ——— day of May or 1st of June, 1909, made a verbal contract with plaintiff, Osce Goodwin, in substance, that, if the said Goodwin would procure a purchaser to buy said ranch at $35 per acre, Mrs. Gunter would pay him a commission of 5 per cent. of the gross amount of the sale. The price fixed was a material element in the promise, and was the condition upon which Mrs. Gunter would pay the commission. It was understood that it was immaterial whether Goodwin became the purchaser of the land or sold it to others, but that commission would be just the same at the price stated. It was later agreed that at this price the crops then unharvested went with the land. There were about 4,000 acres in cultivation —wheat, oats, cotton, corn, etc. The land had been upon the market since the fall of 1908, but no sale had been effected.

"That Goodwin endeavored to find a purchaser for said land under said agreement and approached several parties, until on or about the 14th day of June, 1909, he made an arrangement with one W. C. Witwer, who was an employé of Eberle & Casler, engaged in the telephone and land business, by which agreement and arrangement Goodwin agreed with Witwer that, if he (Witwer) could interest and procure one Henry D. Lindsley to purchase said land, that he (Goodwin) would divide the commission, stating what the amount was, and to offer, as an inducement, that he (Goodwin) would go into the deal as part purchaser to the extent of $25,000, and would finance the deal as to all above $100,000. That immediately the said Witwer engaged the said Henry D. Lindsley in conversation and informed him in respect to the Gunter ranch being for sale, the price, and recommended it as a good purchase, especially for Mr. Lindsley, one out of which a good profit could be made. That after the talk with Witwer he (Lindsley) in a day or two called on a son-in-law of Mrs. Gunter, who then lived in Dallas, in an effort to ascertain the names and addresses of proper parties, and also telephoned one H. C. Coke, in the city, for the same purpose, who advised him that Judge Don A. Bliss of San Antonio represented the Gunter estate. That on the 17th day of June the said Lindsley wrote said Don A. Bliss, in which letter he stated that Judge Coke had informed him that said Bliss represented the Gunter estate and had been informed that said ranch was for sale at an attractive price, and desiring information which the said Bliss gave in reply, and referring him to L. M. Tuck for more detailed information. That after some two or three conversations with Mr. Lindsley, in which he still recommended the investment, Mr. Witwer informed Mr. Lindsley, in response to an inquiry, in substance, that he (Witwer) had no personal interest in the transaction, but would like to get a position to resell and boost the land in small tracts if he (Lindsley) bought, and that he thought money could be made out of it. The said Lindsley gave Witwer to understand that some such arrangement could be made. At the same time Mr. Witwer informed Mr. Lindsley, in response to an inquiry, in substance, that Mr. Goodwin's interest in the matter was only that of a prospective interested purchaser, in whole or in part with others, or to assist in financing the deal. Goodwin was not present and did not know of this conversation. A day or so later Lindsley and Witwer went together to inspect the land. They were shown over the ranch by Mr. Tuck, the representative and general manager of Mrs. Gunter, in charge of the place. The crops for the year were estimated by Tuck and Lindsley to be about the value of $35,000 gross without deducting expenses of gathering and marketing. On returning to Dallas, the home of Mr. Lindsley, he, on July 5, 1909, took the night train for San Antonio, after making telephone engagement with Judge Bliss, and arrived at the office of Judge Bliss July 6th, about 11 o'clock a. m. Previously, and on June 24, 1909, Witwer had addressed a letter to Mrs. Gunter at San Antonio, sending a carbon copy also to Judge Bliss, in respect to Lindsley being interested in the transaction, etc., all as shown by said letter in evidence, to which reference is here made. That on the morning of July 6th Osce Goodwin, plaintiff in this cause, addressed a telegraphic communication to Judge Bliss, San Antonio, in respect to Lindsley, his claim for commission, etc., as shown by the telegram in evidence, to which reference is here made, and a letter written upon the same day but received the following day. This telegram was received by Judge Bliss on the morning of July 6th before any negotiations had been opened between him and Mr. Lindsley.

"That before any negotiations were opened between Lindsley and Bliss, the letter of Mr. Witwer and the telegram of Mr. Goodwin were shown Mr. Lindsley and he read them; whereupon the said Lindsley represented to Mrs. Gunter's said agent, Don A. Bliss, that neither Witwer nor the said Goodwin had anything to do with the procuring of him as a purchaser of said lands, that the only interest Mr. Witwer had in the transaction was to get employment to resell the land in small tracts should the sale be made to Lindsley, and that, so far as Goodwin was concerned, he did not know

him in the transaction at all, and that, if his offer of $30 per acre cash for said land should be accepted, Mrs. Gunter would have to pay no commission to any one and the price would be net to her. These representations were communicated to Mrs. Gunter by said Bliss, the same were believed by the said Bliss and Mrs. Gunter and were relied upon by them, and the said Mrs. Gunter was induced thereby to accept said Lindsley's proposition of $30 per acre cash for said lands, and to make the sale of said land to him, which she would not otherwise have done, and the said Lindsley was informed at the time that his offer was accepted with the distinct understanding that neither Witwer nor Goodwin had procured him as a purchaser and that Mrs. Gunter would have to pay no commission. That a written contract was entered into on the said 6th day of July, 1909, for the sale of said ranch to said Lindsley. As soon as the titles were approved, and on October 1, 1909, the deal was closed in pursuance with said contract with Lindsley, and the cash money was paid to said Mrs. Gunter by said Lindsley and his then associates; said price being $30 per acre. That after W. C. Witwer was engaged by plaintiff, Goodwin, he reported from time to time to Goodwin the progress with respect to the transaction with Lindsley. That the conversations of Witwer with Lindsley, and the visits of Witwer to Lindsley, to some extent stimulated—or, to use the language of Lindsley himself, 'accelerated'— the said Lindsley in his movements which resulted in the purchase by him of the land. That said Lindsley was not willing to pay more for said lands than his offer of $30 per acre, and would not have done so; hence he was not procured as a purchaser at the price at which Goodwin had the land for sale.

## "Conclusion of Law.

"The court finds as a conclusion of law that W. C. Witwer did not disclose to Lindsley his relations to Goodwin, and that Lindsley had a right to rely upon statements from Witwer to the effect that he [Witwer] had no interest in the matter, and that Goodwin's only interest was as a proposed purchaser, in whole or in part, or to finance the deal, and that upon this Lindsley made the statements that he did to Judge Bliss in good faith, and that Judge Bliss accepted the same in good faith, and as true, and would not have sold the land at the price he did otherwise, and that hence plaintiff was not the procuring cause of the sale and is not entitled to recover in this suit, therefore judgment is rendered for the defendant, Roxana Gunter; and, as a matter of course, for the other defendant, Henry D. Lindsley, who was made a party defendant by Roxana Gunter with prayer for judgment over against him only in case judgment should be rendered against her."

## Opinion.

We adopt the same as part of our opinion.

The first question to determine is whether or not Goodwin was the procuring cause of Lindsley's purchase. The law is too well settled, that the broker bringing to his principal a customer who is ready, able, and willing to purchase land is entitled to his commission, to need citations. This principle of law is not denied by either of the parties. In order to make a contract of sale, in the very first instance, binding and enforceable, the minds of the contracting parties must meet and the terms of sale be well understood by both and agreed upon.

Now, Goodwin's contract was, says the court in his finding, "to procure a purchaser to buy said ranch at $35 per acre. Mrs. Gunter would pay him a commission of 5 per cent. of the gross amount of sale. * * * It was also understood that it was immaterial whether Goodwin became the purchaser of the land or sold it to others, but a commission would be paid just the same, at the price stated. It was later agreed that at this price the crops then unharvested went with the land."

Goodwin agreed with Witwer that, if he could procure Lindsley to purchase the land, he would divide the commission, and as an inducement Goodwin would go in the deal as a part purchaser to the extent of $25,000 and finance all above $100,000. In a conversation with Lindsley, Witwer informed him of the Gunter ranch being for sale, the price, and recommended it, etc. Lindsley, after this talk, called on the son-in-law of Mrs. Gunter living in Dallas, and then on H. C. Coke, a lawyer in Dallas, an attorney and friend of the late Jot Gunter, and learned that Judge Bliss represented the Gunter estate. He wrote Judge Bliss on June 17th saying he had learned through Coke that he represented the estate and wanted information, which Judge Bliss gave in reply and referred him to L. M. Tuck, manager on place, for further information. After several conversations in which Witwer, the agent of Goodwin, still recommended the purchase, he informed Lindsley, in response to an inquiry, he had no personal interest in the transaction, but would like to get a position to resell and boost the land in small tracts, if he (Lindsley) bought, and that he thought money could be made of it. At the same time informed him that Goodwin's interest in the matter was only that of a prospective purchaser in whole or in part with others, or to assist in financing the deal. A day or two afterwards Lindsley, with Witwer, took train, made an inspection of the place at Lindsley's expense, and returned to Dallas, and Lindsley then came on direct to San Antonio. Judge Bliss and Mrs. Gunter were notified by Witwer that Lindsley would probably see him about purchasing land, and also by Goodwin, who asked to be protected in commissions. These facts were laid before Lindsley by Judge Bliss

timely, and Lindsley denied that he was procured by them to make this purchase, and stated the facts as above found by the court. Mrs. Gunter and Bliss relied on these statements and closed the deal for $30 per acre, instead of $35, Mrs. Gunter retaining the crop, for he would not pay more, and sold at a price less than the price at which Goodwin was authorized to make the sale.

The facts as related do not show any contract made by Goodwin, through his agent, with Lindsley to purchase the land at $35 per acre. It was not even made known to Lindsley by Witwer who controlled the land for sale. Lindsley had to hunt that out for himself. There was no element of a definite and fixed contract offered, presented, or considered by Lindsley at that time, for he did not know he was dealing with one then authorized to make a sale at all. He supposed Witwer, from his own statements, was seeking an opportunity to gain a personal benefit himself and handle the property as Lindsley's agent and salesman, and when he asked about Goodwin he was promptly told by Witwer that Goodwin's interest was that of a prospective purchaser. This very answer was not only untrue and misleading, but of itself sufficient to prevent Lindsley from seeing Goodwin and evidently, as stated, "accelerated," or speeded Lindsley to San Antonio as a competitor of Goodwin, rather than one acting with him as a contracting party clothed with ample authority to make a binding trade. There is not the slightest ground to put this case in the class where the agent was the procuring cause of bringing the parties together, for there is no evidence found that Lindsley was even told by the broker with whom he could close the deal acting as a broker. He found out himself from Coke, without a suggestion that Goodwin could make the contract. On the contrary, he was told Goodwin was *interested* as a purchaser, and he would not likely go to him after that; Witwer, himself, not pretending to represent any seller. We understand the law to be that it makes no difference whether the seller knew, or not, that the purchaser was procured and sent by his agent, if the sale was closed upon the very terms given the agent to sell the land. McDonald v. Cabiness, 98 S. W. 945, 946. But in such a case it must be on the very terms authorized. This suit is on the express contract. The seller in this case, at the time the sale was made, was put in possession of the claim of the broker, it is true, but was denied then, and found by the court in favor of Lindsley's own representation. The court found that the broker was not the procuring cause, and further found against him, to the effect Lindsley had a right to rely on the statement that Goodwin's interest was not that of a broker offering to sell land for his principal, but that his interest was wholly personal as a proposed purchaser.

[1] We cannot set aside the findings of the learned judge who tried this cause, for they are supported by the evidence. We are therefore as much bound to respect them as the parties themselves are bound by them.

[2] Before a broker becomes entitled to his commission, he must establish the fact that he was the efficient agent or procuring cause of sale. Birch v. Hester, 109 S. W. 399.

A purchaser must be found by the broker and procured through his exertions to entitle him to commissions. Evans v. Gay, 74 S. W. 575.

[3] These parties, as found by the court, were not brought together by the agent. It is not shown by the findings of fact that Witwer knew who, if any one, besides Goodwin, could make a contract with Lindsley. The name of the person represented by him as such was not disclosed by him, and his course throughout was one of such concealment and misrepresentation as did likely prevent Lindsley from seeing Goodwin, a supposed rival for the purchase of the land. It was perhaps his idea to keep them apart and reap a greater revenue in handling it for Lindsley for his own benefit. At any rate, this attitude of concealment was in keeping with his whole acts. Concealing the real facts from Lindsley, he requests appellee to protect him in his commission. Did he expect this to be communicated, or did he expect the sale to be made without Lindsley's knowledge and then receive compensation from the seller by adding, without the purchaser's knowledge, the commission to the purchase price. Else, why was he not frank with Lindsley and make known all the facts to him before he came to San Antonio?

Lindsley knew of the property and had data before him when Witwer talked with him. Witwer did not know parties, terms of sale, or property. All information was procured by Lindsley, himself, not influenced by Witwer, nor was he brought to Judge Bliss, the agent and attorney having charge of this matter for Mrs. Gunter, by him.

It is a reasonable rule, founded on good morals and sound law, that protects the agent in his commissions against a seller and purchaser, where they collusively undertake to change the price at which the agent was authorized to make the sale, where he was the procuring cause, in fact, in bringing them together; the purchaser being ready, willing, and able to pay the price.

But that is not the case here. The court has found that both seller and purchaser acted in good faith and the broker acted in bad faith. Lindsley was not willing to pay price Goodwin was authorized to sell for and would not have closed at that. Nor was he procured by Goodwin, and hence no judgment can be entered upon the court's findings for appellant.

We listened to the interesting oral arguments made, and read with much interest the exhaustive and able briefs filed. They

have contributed much towards making our labors and investigations somewhat easier.

We have considered all the various assignments of error and propositions thereunder and the many different phases in which the same questions are presented, and regard them all without merit, and they are overruled.

From the view we take of this case, we express no opinion on the cross-action of Mrs. Gunter to recover over against Lindsley, as there is no judgment against her.

The judgment of the court will be affirmed, accordingly.

### On Motion for Rehearing.

We must decline to make the requested additional finding as facts of a sentence or more from the lengthy testimony of Witwer. Whether we would have made the same finding the district court did is another question, but there is ample testimony to support it. The finding of the court is that appellant was not the procuring cause. We have already said, if appellant were the procuring cause of sale, he would be· entitled to his commission on his contract. We cited the case of McDonald v. Cabiness, 98 S. W. 945, to express fully the idea without further elaboration.

It is true that that opinion was in a suit based upon the quantum meruit, while this is ·on an express contract, as we designated it, and so it is. Having sued upon the contract and no recovery sought upon an implied contract for services performed, our discussion has been confined to that theory.

[4] If the sale had been consummated on the terms of appellant's alleged contract, because he had procured the purchaser willing, ready, and able to pay the authorized price, the agent would then have performed his duty. He would have still been entitled to his commission, if the purchaser was procured by him and the sale made on his procurement, even though the terms and price changed.

But we said in our opinion it made no difference whether the seller knew or not that the purchaser was procured by him to fix his liability in certain cases, if the sale was closed by a purchaser sent by him on terms given the agent. The word "very" added nothing to its force or logic.

Again, he would not be entitled in such a case to commissions on a contract when the purchaser was procured, without the seller's knowledge, if the sale was closed on different terms from that given the agent to sell, for that would not entitle him to that particular compensation for services in procuring a purchaser.

This case is disposed of upon the alleged contractual relations of the parties as discussed, because the district court has determined for us the facts, finding that the purchaser was not procured by appellant; in other words, did not procure Lindsley as the purchaser.

The motion for a rehearing is therefore denied.